Good morning. May it please the Court. My name is Megan Brewer and I represent Petitioner Maria Lucina Santana Illan. I would like to reserve five minutes of my time for rebuttal. There are two petitions for review in this case. The first challenges the denial of the petitioner's motion to reopen the removal order based on agency error and change in law. The second challenges the termination of deportation proceedings. Petitioner raises three challenges to the agency's decisions. First, the agency acted outside its statutory authority when it conducted removal proceedings while deportation proceedings were already pending. Second, the IJ and BIA erred in finding that termination of deportation proceedings was required based on improper service of the order to show cause. Third, the BIA committed legal error by failing to address the precedent decisions raised by Petitioner in determining that there was no fundamental change in law in the removal case. The central issue as to both petitions for review is that the IJ and BIA acted outside the authority granted by Congress when they conducted removal proceedings while deportation proceedings were already pending. Section 309C of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, known as IRA-IRA, sets forth the rule that the new procedures enacted in the statute providing for removal proceedings instead of deportation proceedings shall not apply to individuals who were in pending deportation proceedings on April 1, 1997, the statute's effective date. Petitioner was in pending deportation proceedings on April 1, 1997, and IRA-IRA therefore dictated that she would continue to be subject to deportation proceedings, not removal proceedings. Section 309C of IRA-IRA provided two exceptions to the general rule that the new procedures would not apply to pending deportation cases. Neither of those exceptions apply. Ms. Brewer? Yes, Your Honor. I wanted to ask you, because it seems like your client has a lot of hurdles with respect to the removal proceedings and the deportation proceedings. But it does appear that there's a lot of equities in her favor. Because she has been in the United States, apparently, for more than 30 years. Is that right?  Yes, Your Honor. And works as a medical assistant. Looks like she's stayed away from any criminal activity, from what I can tell in the record. Paying her taxes and volunteers in the community. Have you and the government's counsel discussed any type of mediation, or has that been broached? It has not, but Petitioner would be amenable to mediation. Okay. All right. I just was curious, because otherwise, I'm not quite sure. I'm trying to figure out, on the removal proceedings, you seem to, you know, argue that BIA legally erred with respect to the fundamental change of law analysis, in declining the sua sante reopening. But even assuming that is true, the BIA also, I think, found that Ms. Sillian failed to show the required hardship for cancellation of removal. So, I guess, what's your best argument regarding the hardship determination? Just on that point, Your Honor, I think it's not clear that the BIA found that she didn't establish the requisite hardship, because the BIA's decision in 2005 is an affirmance without opinion, which doesn't require the BIA to agree with the immigration judge's reasoning, only with the result. And since the immigration judge had two alternate holdings, it doesn't establish which one, if any, was upheld by the BIA. The BIA simply just affirmed the result, which was the denial of relief. Your Honor, I think the best argument in this case is simply that the removal proceeding was conducted without legal authority, because it violated Section 309C of IRA-IRA. Granted, if this court vacates the removal order and the removal proceeding entirely, that doesn't actually get Petitioner any status, because the status that she was trying to apply for was in deportation proceedings, was suspension of deportation. But I still think, legally, that is the strongest argument. And just that, if the statute doesn't allow for the agency to conduct removal proceedings, then they should be found null and void when they're conducted without authority, that the agency is not permitted to act outside of the mandate of Congress, which was clear in Section 309C of IRA-IRA, that removal proceedings shall not apply when there's a pending deportation proceeding that was commenced prior to April 1st, 1997. I'm not sure, I guess I don't read Section 309C the same way that you do. Can you explain to me what language it is in that statutory provision that prevents the agency from initiating removal proceedings when deportation proceedings are in progress? Yes, Your Honor. So, Section 309C-1 is titled, General Rule that the new rules do not apply. And it says that an alien who is in exclusion or deportation proceedings as of the effective date in Section A, the amendments made by this subtitle shall not apply. So when it's referring to the amendments made by this subtitle, that's the existence of removal proceedings. That's one of the things that was created by IRA-IRA. And Section B, the proceedings shall continue to be conducted without regard to such amendments. So that's the general rule, that if a deportation proceeding was pending on the effective date of IRA-IRA, then the new procedures set forth in IRA-IRA, namely removal proceedings, do not apply to those cases. So how does that become a prohibition on initiating removal proceedings? It sounds like just a statement of whether the new rules apply retroactively. I think it's saying that the new rules shall not apply if the case is already pending. And so shall not apply means that the removal proceedings shall not apply to those individuals. And I think the exceptions to that rule illustrate why the general rule applies. There's two exceptions. And the first one requires that the Attorney General must issue a notice, a 30-day notice, electing to transfer the case into a removal proceeding instead of a deportation proceeding. That was not done here. And the second exception requires that first the deportation proceeding be terminated, then a new charging document and notice to appear must be issued to commence removal proceedings. That also was not followed here. And we also cited some authorities, especially in the reply brief, showing why it was also impossible that those procedures could have been followed because the agency required the promulgation of regulations in order to implement those parts of the statute, and those regulations were never promulgated. So because it was impossible that the exceptions applied, then it's clear that the general rule must apply that removal proceedings do not apply to somebody who's in pending deportation proceedings on April 1, 1997, and those proceedings remain pending. And I think if the statute is clear that removal proceedings shall not apply, then conducting a removal proceeding is in violation of the statute and therefore without congressional authority. Do you have any other authority where any court has interpreted the statute in the manner you're suggesting? The court has not interpreted the statute on this issue at all. Alcoraz addressed a completely different issue, but Alcoraz is illustrative because it kind of explains IRA-IRA and the old and new procedures. And then it also talks about repapering, which is one of the exceptions. But as the court explains in Alcoraz, repapering was never actually implemented. It's just that the petitioners in Alcoraz were seeking administrative closure, which was a step on the way to repapering, and repapering was never actually implemented. I'm running short on time, so unless the court has any other questions or would like me to address the other issues in the case, I'll reserve my time. Okay. Ms. Carter, you must state your appearance, please. We can't hear you, Ms. Carter. I apologize. I was on mute. Good morning, and may it please the Court. Margo Carter of the United States Attorney General. The petitioner here presents a number of issues over which this court lacks jurisdiction. There are two petitions for review here. The first petition for review involves termination of deportation proceedings, which is something over which this court lacks jurisdiction. The second petition for review, the motion to reopen decision by the Board of Immigration Appeals, the court obviously can review a motion to reopen for abuse of discretion, but the petitioner's motion to reopen here was filed 11 years late. There are no exceptions that she identifies to the motion to reopen deadline. And the only thing that remains, therefore, is this possibility of sua sponte reopening. In general, this court has held that sua sponte reopening is not something that this court is willing to review. The court created an exception, a narrow exception, in Bonilla, where if the board's decision rested on a misunderstanding of the law, the court could reach into that sua sponte decision and interpret or assess that legal issue. But in this case, there is no such legal issue that would give the court the jurisdictional hook to review that sua sponte denial of reopening. And the denial of reopening was not an abuse of discretion here. There was no arbitrary, irrational, or contrary-to-law decision where the petitioner was seeking reopening based on a motion to reopen that was filed 11 years out of date and identified no exception to the statute or regulations that applied. Barbara, can I ask you a question? I just kind of wanted to kind of see what the government's, what your thoughts were on mediation here, because it seems like Ms. DeLong, as I indicated earlier, has been here for more than 30 years. I think she came when she was 13. Thirteen years. And then she was improperly served, you know, back in 1988. And then it looks like she returned in 1992 to attend a funeral, which I guess was the significant fact regarding cancellation of removal. But other than that, I'm trying to figure out, you know, why this wouldn't be an appropriate case for mediation, since, from what I can tell, she's stayed away from any activities. She's apparently a volunteer. All the letters that were in support of her, I assume that you all are aware of that as well. Is this not an appropriate case for mediation? I think it's something that we could consider mediation in this case. I think, ultimately, right now, I don't have any guidance that would propel this case into mediation. And, you know, the proceedings have been ongoing for some time. And then, obviously, in this case, the petitioner has a final order of removal from 2005 that, you know, she's now seeking to revisit in 2021. But, I mean, I think there's no reason we couldn't potentially explore mediation, except that, like I said, there's no guidance that I have. And this case has been around for a very long time. Can you respond to the 309C1 arguments that Ms. Brewer was making? Absolutely, absolutely. I think, at the end of the day, the court doesn't even need to reach the 309C arguments. I mean, when you look at the board's decision, the board simply said, we've considered your arguments regarding termination of proceedings. And we don't find them persuasive. And this case has been pending for long enough, and you delayed long enough, that we just don't think that this is worthy of an exercise of sua sponte authority. In short, it was really a straight-up discretionary decision. This is sort of the essence of sua sponte authority right here, to decide the case in the way that they did. I mean, they said that, you know, they considered the argument. They said it doesn't persuade us that the exercise of our authority to reopen sua sponte is warranted at this late date. And the truth is that the petitioner, in her removal proceedings, which were conducted from 2002 to 2005, she was represented by counsel during that time. She admitted the factual allegations in the notice to appear. She conceded that she was removable as charged, effectively conceding that the removal statute did apply to her. And given all of this, there just was no basis to reopen the proceedings. And I think that's sort of the challenge with this case, is that there's really nothing that can be done at this point. I mean, she's been denied cancellation. And I'll note that when the board issued its decision in January 26, 2018, denying cancellation of removal yet again, they analyzed new evidence and yet again made another hardship finding, saying, look, you know, you've established additional equities in the intervening years, but the evidence submitted does not establish an exceptional situation warranting reopening at this late date. And so once again, they considered the hardship and made yet another discretionary determination that's dispositive and unreviewable. I think the petitioner understandably wants to get back into these deportation proceedings. But it's worth noting, too, that the deportation proceedings were flawed at the outset. The deportation proceedings were commenced with an order to show cause that was served on a minor and served by regular male at the time when she was required to have been served in person. And indeed, there's— Can you address—I think it was one of the 28-J letters about the DHS docketing manual that suggests that when a matter is administratively closed, you know, new charges shouldn't be filed. Can you address that? Sure, Your Honor. I mean, I think that—I'm not sure exactly how it came to be the case that DHS filed charges in a case that was administratively closed in this case. That said, I think it's also worth noting that just because that took place doesn't mean—it doesn't really change anything in terms of this Court's jurisdiction to address the termination order or to address the motion to reopen Sua Sponte. Nor does this Court have permission to go back to the 2005 removal order and revisit that on the basis of this DHS memo. The time for seeking review of that 2005 order expired 30 days after the Board's decision in 2005, and those limits are mandatory and jurisdictional. So to the extent that the Petitioner raises this memo regarding administrative closure, I don't think it's relevant here. And I also think it's worth noting that, again, the order to show cause was never validly served in the first place. And so even if these two proceedings should not have been taking place at the same time, even if we were to say that that was the case, the deportation proceedings that were initiated with that order to show cause were essentially not valid from the outset because those proceedings were initiated with this order to show cause that was really fatally flawed. And ultimately, when the Department of Homeland Security later moved to dismiss the case, the Department of Homeland Security did so on the basis of the flaws in that order to show cause. And that was a basically valid reason for terminating the order to show cause and not going forward with those proceedings. So I think despite the sort of convoluted procedural history that we have in this case, where we've got like the removal proceedings from 2002 to 2005 bracketed by the deportation proceedings that began in a flawed way in 1991, and then the petitioners sought to recalendar them 25 years later in 2016, those deportation proceedings sort of fall by the wayside given that the order to show cause was improvidently issued from the inception. I did notice also a statement by the immigration judge. He said something, she or he, that we're at an impasse during the deportation proceedings. I'm wondering if that reflects a misunderstanding. I think it was, you know, the immigration judge's statement that the deportations were at an impasse and I'm just trying to figure out if that doesn't reflect some sort of misunderstanding of discretion to carry on with the deportation proceedings. I know the petitioner made that argument in her brief, and I don't think that that reflects anything other than a recognition that DHS was unwilling to go forward with the charging document in the deportation proceedings. And at the end of the day, DHS can't be obligated to go forward with proceedings that it has decided to terminate. I mean, and I think that's sort of the whole issue with that petition for review of the termination order and why this court lacks jurisdiction. I mean, ultimately, nothing really came of those deportation proceedings. The petitioner was not ordered deported as a result of those, and there's effectively no harm as a result of that decision, apart from the fact that obviously she'd prefer to apply for suspension of deportation rather than, you know, the higher burden involved in cancellation of removal. But in any event, the petitioner has presented a number of issues, but there are, as Judge Morgia, I think you observed, a number of hurdles in this case. And unfortunately for Petitioner Herod, they're just insurmountable, it seems. The termination order is not a final order of review that this court can examine. And as to the motion to reopen, it really was denied based on an exercise of discretion by the board where the board declined to sua sponte reopen the case. And the motion to reopen was filed 11 years late. And there are no exceptions that apply, nor was there any legal error in the board's decision that would allow this court to assert jurisdiction over the denial of sua sponte reopening. And, you know, I did indicate the hurdles, but I also indicated the number of equities that she has in her favor. And that's why I was just wondering because I know the agency can do certain things on their own here. So I just wanted to inquire about that because, again, it seems to me her greatest offense was going back. I mean, she was brought over when she was 13, and then she went back for a funeral. I don't think that's disputed here back in 1992. So I'm not quite sure if there's any. It seems like maybe mediation might be appropriate here. It might be. And I would say that I'm not sure that mediation is going to get petitioner where she wants to go insofar as I don't think that's something that we would agree to. And mediation would be to reinitiate the deportation proceedings and allow the petitioner to apply for suspension of deportation. Apart from that, you know, if there's some other approach that opposing counsel would like to make regarding mediation, you know, we're available to listen to that approach. And if the court has nothing further, we'll just close by saying that, again, there are a number of jurisdictional issues in this case. And the court should dismiss the petitions for review for the reasons identified. Thank you. Thank you. Ms. Brewer. First, I'd like to address the jurisdiction for the petition for review of the motion to reopen removal proceedings. There clearly is jurisdiction to review the denial of the suicide motion to reopen for agency error. Petitioner has asked the court to declare this removal order null and void. If you look at our 28 letter on on the Anderson case, that was also a removal order that was entered without legal authority. And it was raised in a context of a suicide motion to reopen that was denied. But alternatively, even if the court does not want to go as far as to just declare the order null and void, the board did not address the argument regarding Section 309 C of IRA at all. And that's a legal error that's reviewable by the court. So at a minimum, the court could remand this case to the board to address that. If the petitioner raised an argument that the board lacks legal authority to conduct the proceeding, it's clearly a legal error to completely fail to address that since it's not even within the board's discretion whether to conduct a proceeding if they lack the legal authority. And if the removal proceeding was conducted when the agency didn't have the authority to do so, that cannot be waived. A lack of a congressional mandate cannot be waived by a respondent in removal proceedings by conceding removability. And any delay in raising the issue is not relevant when it's an unlawful proceeding in the first place. Also, to address the deportation proceeding, I'd just like to raise the court's decisions in Coley and Alaska and the board's decisions in Carrera Hernandez, WAFC, and Mejia Andito, which clearly show that a flaw in the service of the charging document does not deprive the immigration judge of jurisdiction over the case. So there was no fatal flaw in the deportation proceedings, and when petitioner participated in those proceedings, that proved that she had actual notice and there was no prejudice to continuing those proceedings. Thank you. I'm sorry, we apparently are having issues with the clock. You actually have about one more minute, but I think we understand your arguments. And so thank you very much. Both of you, Ms. Carter, appreciate your argument. Ms. Brewer, thank you very much. The case of, I didn't ask my colleagues if they had any other further questions. No, thank you. The case of Maria Lucina Santana versus Merrick Garland is now submitted. Thank you. The next case.
judges: Murguia, Bade, Lee